**Case Nos. 23-2168, 23-2170, 23-2171, 24-2039**

---

In the United States Court of Appeals
for the Tenth Circuit

---

**United States of America**,
Plaintiff-Appellee,

v.

**Siraj Ibn Wahhaj,**
Defendant-Appellant.

---

**United States of America**,
Plaintiff-Appellee,

v.

**Hujrah Wahhaj,**
Defendant-Appellant.

---

**United States of America**,
Plaintiff-Appellee,

v.

**Subhanah Wahhaj,**
Defendant-Appellant.

---

**United States of America**,
Plaintiff-Appellee,

v.

**Lucas Morton,**
Defendant-Appellant.

---

On Appeal from the United States District Court
for the District of New Mexico (Albuquerque)
The Honorable William P. Johnson, District Judge
D.C. Case No. 1:18-cr-02945-WJ

---

**Appellant Siraj Ibn Wahhaj's Reply Brief**

---

Office of the Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Tel: (303) 294-7002
Fax: (303) 294-1192
Email: Jacob_Rasch-Chabot@fd.org

Virginia L. Grady
Federal Public Defender

Jacob Rasch-Chabot
Assistant Federal Public Defender

Attorneys for Appellant
Siraj Ibn Wahhaj

Oral argument is requested.

April 29, 2026

# Table of Contents

Table of Authorities ..... iii

Reply Argument ..... 1

I. The district court erred in denying Mr. Wahhaj's motion to sever. ..... 1

A. Renewal of the motion to sever is not required. ..... 2

B. This Court cannot conduct a Rule 403 analysis in the first instance. ..... 3

C. The government does not otherwise argue that Mr. Wahhaj has failed to show actual prejudice. ..... 6

D. Limiting instructions were insufficient. ..... 7

E. Judicial economy concerns do not save the district court's ruling. ..... 8

F. The error was not harmless. ..... 9

II. The district court plainly erred in failing to instruct the jury on the jurisdictional element. ..... 11

A. The district court failed to correctly instruct the jury on the jurisdictional element of the offense. ..... 11

B. The error was plain. ..... 17

C. Prejudice ..... 19

III. The evidence was insufficient on the jurisdictional element. ..... 20

Conclusion ..... 26

Certificate of Compliance ..... 27

# Table of Authorities

## Cases

*Borden v. United States,* 593 U.S. 420 (2021) ....................11, 12, 13

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384 (1990) .................... 8

*Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790 (10th Cir. 2025) .................... 2

*United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019) .................... 7

*Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008) ....................2, 3, 4

*United States v. Bailey*, 444 U.S. 394 (1980) .................... 11

*United States v. Baker*, 98 F.3d 330 (8th Cir. 1996) .................... 7

*United States v. Black*, 25 F.4th 766 (10th Cir. 2022) .................... 4

*United States v. Blair*, 54 F.3d 639 (10th Cir. 1995) .................... 11

*United States v. Casados*, 26 F.4th 845 (10th Cir. 2022) .................... 4

*United States v. Guardia*, 135 F.3d 1326 (10th Cir. 1998) .................... 5

*United States v. Ham*, 998 F.2d 1247(4th Cir. 1993) .................... 7

*United States v. Hankins*, 127 F.3d 932 (10th Cir. 1997) .................... 12

*United States v. Hassan*, 742 F.3d 104 (4th Cir. 2014) ....................16, 17

*United States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982) .................... 21

*United States v. Jones*, 530 F.3d 1292 (10th Cir. 2008) .................... 2

*United States v. Kearney*, 150 F.4th 1328 (10th Cir. 2025) .................... 22

*United States v. Martinez-Hernandez*, 118 F.4th 72 (1st Cir. 2024) .................... 17

*United States v. Medeiros*, 897 F.2d 13 (1st Cir. 1990) .................... 21

*United States v. Rosa*, 17 F.3d 1531 (2d Cir. 1994)....................17, 21

*United States v. Rudolph*, 152 F.4th 1197 (10th Cir. 2025).................... 8

*United States v. Soy*, 454 F.3d 766 (7th Cir. 2006)................................................. 21

*United States v. Tony*, 948 F.3d 1259 (10th Cir. 2020) ............................................... 2, 3

*United States v. Watson*, 766 F.3d 1219 (10th Cir. 2014) .............................................. 5

*United States v. Wyatt*, 964 F.3d 947 (10th Cir. 2020) .............................................. 22

**Other Authorities**

Merriam-Webster, *Object*, merriam-webster.com/dictionary/object............................ 18

**Rules**

Fed. R. Crim. P. 14 ....................................................................................................... 5

Fed. R. Crim. P. 8(a) ................................................................................................. 1, 5

Fed. R. Evid. 403 .................................................................................. 1, 2, 3, 4, 5, 6, 7

## Reply Argument

### I. The district court erred in denying Mr. Wahhaj's motion to sever.

Below, Mr. Wahhaj moved to sever on the ground that highly prejudicial evidence of A.G.'s kidnapping and death would be excluded in a separate trial under Rule 403 of the Federal Rules of Evidence. R. vol. 2 at 695. While the government opposed severance, it *did not dispute* that the evidence would be excluded under Rule 403 in a separate trial. *Id.* at 836. Instead, it argued only that he would not suffer prejudice "by having to sit while evidence of the alleged kidnapping and eventual death was introduced," *id.*, and that limiting instructions would suffice, *id.* at 838. The district court adopted the government's position in full. Given there was no dispute as to the admissibility of evidence under Rule 403, the district court did not address it, instead concluding that Mr. Wahhaj would not be prejudiced by that evidence and that limiting instructions would suffice. R. vol. 3 at 1139. Mr. Wahhaj's opening brief challenges these conclusions.

The government does not dispute any of this, nor could it.[1] Nevertheless, rather than defend the district court's reasoning, which it argued below, it now asserts,

[1] Its "Relevant background" section (at 135-37) simply omits these inconvenient facts. It acknowledges only that Mr. Wahhaj argued the evidence would be "inadmissible" without mentioning Rule 403, and it notes only that the government "opposed" the motion, without stating the arguments it made (or more importantly, didn't make). And its discussion of the district court's ruling focuses on its joinder analysis under Rule 8(a) and its assumption that evidence of the kidnapping would be *relevant* to the other charges, which of course is not a Rule 403 balancing.

for the first time on appeal, that the evidence of A.G.'s kidnapping and death would *not* have been excluded under Rule 403. This argument for affirmance on alternative grounds is procedurally improper. Indeed, it is well established that this Court cannot conduct a Rule 403 analysis in the first instance. *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008) (holding this Court erred in conducting a Rule 403 balancing in the first instance); *United States v. Tony*, 948 F.3d 1259 (10th Cir. 2020) ('[W]e may not conduct the balancing test for the first time on appeal."). Accordingly, this Court cannot even address the government's primary argument on this issue.

Because none of its other miscellaneous arguments are persuasive, this Court must vacate Mr. Wahhaj's convictions and reverse the denial of his severance motion. *See id.* (vacating conviction and ordering new trial).

**A. Renewal of the motion to sever is not required.**

As an initial matter, the government briefly argues in a footnote (at 137 n.45) that this Court should require that defendants renew their motions to sever to preserve it for appellate review. This argument is waived. *Griffith v. El Paso Cnty., Colorado*, 129 F.4th 790, 825 (10th Cir. 2025) ("Arguments raised in a perfunctory manner, *such as in a footnote*, are waived."). In any event, the government is wrong that this Court "has not addressed the issue on the merits." In *United States v. Jones*, 530 F.3d 1292, 1300 n.2 (10th Cir. 2008), the government expressly argued that the Court should find the defendant waived her severance argument by not renewing it at trial. This Court expressly declined to do so, disagreeing with the government's contention

that it had implicitly endorsed this view in a previous case, while noting it had "not embraced [the government's] proposition in other opinions." *Id.* This Court proceeded to review the severance motion for abuse of discretion, with no indication it was merely assuming without deciding that renewal was not required. This constitutes a holding that renewal is not required.

**B. This Court cannot conduct a Rule 403 analysis in the first instance.**

The government's main argument (at 140-45) is that "Rule 403 would not have barred the admission of the kidnapping evidence." Again, the government does not dispute that this was the primary basis of Mr. Wahhaj's motion to sever, that the government did not make this argument below, and that, as a result, the district court did not conduct a Rule 403 analysis below. Accordingly, the government's main argument is that this Court should affirm on alternative grounds by conducting the Rule 403 balancing test in the first instance. This Court is precluded from doing so.

It is well established that this Court "may not conduct the [Rule 403] balancing test for the first time on appeal." *United States v. Tony*, 948 F.3d 1259 (10th Cir. 2020) (citing *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379 (2008)). Indeed, the Supreme Court has held that this Court erred in "assess[ing] the relevance of the evidence itself and conduct[ing] its own balancing of its probative value and potential prejudicial effect." *Id.* The government has made no attempt to explain how or why this Court can ignore this mandate from the Supreme Court.

Nor has the government even addressed this Court's general standard for affirming on alternative grounds. That is, this Court "may affirm on alternative grounds only when those grounds are dispositive, indisputable, and appear clearly in the record." *United States v. Casados*, 26 F.4th 845, 853 (10th Cir. 2022). To that end, this Court typically considers three factors:

> 1. whether the issue was fully briefed and argued in the trial and appeals court,
>
> 2. whether the parties have had a fair opportunity to develop the factual record, and
>
> 3. whether in light of factual findings to which we defer or uncontested facts, our decision would involve only questions of law.

*United States v. Black*, 25 F.4th 766, 777 (10th Cir. 2022). These factors do not support affirmance on alternative grounds.

First, the issue was not fully briefed and argued below. Although Mr. Wahhaj raised it in his motion, the government did not dispute it, and thus the district court did not rule on it. On appeal, the government raised it for the first time in its answer brief, requiring Mr. Wahhaj to address it, if at all, only in the limited space he has in his reply brief.

More importantly, as to the third factor, because the district court did not address the Rule 403 issue, this Court does not have its findings to defer to. As the Supreme Court explained, "With respect to evidentiary questions in general and Rule 403 in particular, a district court virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it."

*Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). Indeed, that is why Courts of Appeals are typically barred from addressing Rule 403 in the first instance.

And finally, this Court's Rule 403 analysis would not involve only questions of law. This Court has repeatedly emphasized the district court's "broad discretion in making rulings under Rule 403." *United States v. Watson*, 766 F.3d 1219, 1241 (10th Cir. 2014) ("We grant district courts this 'considerable discretion' in performing Rule 403 balancing because 'district courts have front-row seats during trial and extensive experience ruling on evidentiary issues.'"). Thus, it can only reverse a district court's decision to exclude evidence under Rule 403 upon showing of a "clear abuse of discretion." *United States v. Guardia*, 135 F.3d 1326, 1331 (10th Cir. 1998). The government has not claimed to have met this burden, nor could it.

Moreover, the government's 403 analysis is flawed in multiple ways. The government (at 140-41) relies extensively on the district court's finding that the evidence of the kidnapping and terrorism charges were "thoroughly intertwined" and "part of a common scheme or plan," and it faults Mr. Wahhaj for failing to challenge these findings. However, these findings were in support of the district court's conclusion that joinder was proper under Rule 8(a), not that severance was not warranted under Rule 14—they say next to nothing about the probative value of the evidence. Nevertheless, the government maintains the probative value of the kidnapping resulting in death evidence was high because it explains why and how defendants conspired to kill federal officers. However, even if the *fact* of A.G.'s death

is necessary to explain the later conspiracy to kill federal officers upon his resurrection, it does not follow that the most prejudicial details of his death and everything leading up to it is highly probative. While the government repeatedly quotes generic statements about how it's not required to sanitize its case, evidence can be emotional, etc., the government fails to address any of Mr. Wahhaj's arguments about the unique prejudice in this case: (1) the gruesome, disturbing, and tragic nature of the evidence; (2) the government's main witnesses were A.G.'s mother from whom he was taken and the children who watched him die; (3) the sheer volume of evidence, taking up roughly half the trial; and (4) most importantly, the evidence went to Mr. Wahhaj's culpability for A.G.'s kidnapping and death, yet the jury knew he could not be held responsible.

Accordingly, contrary to the government's request, this Court cannot affirm on the alternative ground that none of the evidence of A.G.'s kidnapping and death would have been excluded under Rule 403.

### C. The government does not otherwise argue that Mr. Wahhaj has failed to show actual prejudice.

The government's only argument as to prejudice is its unreviewable claim that the evidence would not have been excluded under Rule 403. It does not repeat its argument below, the one the district court adopted, that Mr. Wahhaj would not suffer actual prejudice even assuming the evidence would be excluded in a separate trial. Accordingly, it has waived any argument that the district court did not err in finding

that the admission of this evidence in a joint trial would not cause Mr. Wahhaj actual prejudice.

**D. Limiting instructions were insufficient.**

Similar to its prejudice analysis, the government's argument that limiting instructions could suffice to cure any prejudice depends primarily on its claim that the evidence would not have been excluded under Rule 403. As Mr. Wahhaj demonstrated in his opening brief, the kidnapping resulting in death evidence was far more prejudicial than several other cases where circuit courts found limiting instructions insufficient, cases which Mr. Wahhaj discussed in depth. *United States v. Baker*, 98 F.3d 330 (8th Cir. 1996); *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012); *United States v. Blunt*, 930 F.3d 119 (3d Cir. 2019), *United States v. Ham*, 998 F.2d 1247 (4th Cir. 1993). The government offers a blanket response that those "[a]ll involved evidence that was highly prejudicial and *would not have been admitted against the defendant in a separate trial*." The government further discusses only one case, *Ham*. It purports to distinguish *Ham* on the ground that the probative value of that evidence was weaker, but that was not part of *Ham*'s analysis of whether the limiting instructions were sufficient.

Thus, the government does not appear to dispute that other circuits have found limiting instructions insufficient under far less prejudicial circumstances. Nor does it cite any cases of its own where similarly prejudicial evidence was found to be curable

by limiting instruction. Accordingly, this Court should recognize that limiting instructions are insufficient to cure the prejudice caused by the introduction of such evidence in a joint trial.[2]

**E. Judicial economy concerns do not save the district court's ruling.**

Briefly, the government (at 145-46) faults Mr. Wahhaj for not addressing the district court's determination that the prejudice did not outweigh judicial economy concerns. However, the district court's error was not in its balancing of prejudice versus judicial economy. The error in the district court's severance analysis was its determination that Mr. Wahhaj failed "to show real prejudice" and that "limiting instructions would … be sufficient to cure any risk of prejudice." R. vol. 3 at 1139. It is these erroneous determinations that constitute the district court's abuse of discretion in denying the motion for severance. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."); *accord United States v. Rudolph*, 152 F.4th 1197, 1217 (10th Cir. 2025). That the district court went on to conclude that this complete absence of prejudice

---

[2] The government argues (at 147) that the limiting instructions given here were in fact sufficient to cure any prejudice, as evidenced by the verdicts. However, this argument is analytically misplaced. Mr. Wahhaj's motion to sever was a *pretrial* motion, and this Court's review is from the perspective of the district court at the time it made the *pretrial* ruling. Thus, the government's arguments about the limiting instructions actually given and the jury's verdicts sound in harmlessness, not error, and are addressed in the harmlessness section below.

was outweighed by judicial-economy concerns is not where the error occurred. *Id.* at 1118 ("*Given that Defendants failed to demonstrate prejudice* and that concerns of judicial economy weigh heavily in favor of a joint trial, the Court concludes severance is entirely unjustified." (emphasis added)). Thus, any argument that judicial-economy concerns continue to outweigh even the extraordinary prejudice Mr. Wahhaj has demonstrated on appeal would go to harmlessness. *See id.* at 1224 n.21 (analyzing error within severance analysis for harmlessness).

**F. The error was not harmless.**

The government has expressly declined to make any harmlessness argument (at 147 n.49), and thus this Court should conclude it has failed to meet its burden.[3] However, because the government does raise two arguments that touch on harmless, Mr. Wahhaj addresses them briefly in an abundance of caution.

First, the government asserts (at 146-47) that the limiting instructions in this case cured any prejudice, as evidenced by the verdicts rendered by the jury—i.e., that Hujrah and Subhanah were found not guilty of the material-support charges, and Lucas was found guilty of the conspiracy to kill federal employees. However, the limiting instructions actually given in this case were entirely generic. They did not specifically address the use of the kidnapping resulting in death evidence against Mr. Wahhaj and could not have cured the prejudice resulting from it. Moreover, the

[3] The government does not dispute that it has the burden to prove harmlessness.

government reads far too much into the jury's verdicts. It is unsurprising that the jury found Hujrah and Subhanah not guilty of the material-support charges given the evidence was extremely thin, and there would be little temptation (whether conscious or subconscious) to convict given they were found guilty of kidnapping resulting in death. As for Lucas, the evidence against him and Siraj on the conspiracy to kill counts was nearly identical, and thus it *would* have been surprising if the jury had rendered different verdicts as to each of them.

Moreover, to be clear, the extraordinary prejudice caused by the kidnapping resulting in death evidence far outweighs any judicial economy concerns. The joint trial was 13 days—longer than average, but hardly unusual. A separate trial against Mr. Wahhaj would be significantly shorter given the exclusion of evidence of kidnapping resulting in death and the fact that there would not be three additional defendants making opening statements and closing arguments, arguing every legal issue, and examining every witness. Under the circumstances, the inconvenience and expense of having a second shorter trial pales in comparison to the unfair prejudice to Mr. Wahhaj.

Accordingly, the district court reversibly erred in denying Mr. Wahhaj's motion to sever.

## II. The district court plainly erred in failing to instruct the jury on the jurisdictional element.

To establish the federal jurisdictional element, the "object of the intended attack" must be "identified with sufficient specificity so as to give rise to the conclusion that," (1) "had the attack been carried out the victim would have been a federal officer," *United States v. Feola*, 420 U.S. 671, 695-96 (1975), or (2) the defendants believed that the victim would have been a federal officer, *United States v. Rosa*, 17 F.3d 1531, 1546 (2d Cir. 1994). The government disputes that these are the only two means of satisfying the jurisdictional element and maintains the district court was not required to instruct the jury on this element. None of its arguments are persuasive.

### A. The district court failed to correctly instruct the jury on the jurisdictional element of the offense.

The government's primary argument is that these are not the *only* two means of satisfying the element. However, they're the only two that are currently recognized in the law, and the government can't even hypothesize another one. Thus, the government's speculation that another means might exist is meritless.

In support, it first points out that neither *Feola* nor *Rose* claimed these are the *exclusive* means of satisfying the jurisdictional element. Perhaps, but others have. As Mr. Wahhaj quoted in his opening brief, the Seventh Circuit has held that "the interstate nexus requirement (which … is 'jurisdictional') can be established in one of two ways: (1) by establishing the bombed building(s) were used in interstate

commerce; or (2) by showing that one of the conspirators believed that the targeted buildings were used in interstate commerce." *United States v. Soy*, 454 F.3d 766, 769 (7th Cir. 2006). The government does not address this holding, nor does it suggest that the federal jurisdictional element would be treated differently where it involves a federal employee as opposed to, for example, interstate commerce, FDIC insurance, or Indian territory.

The government also relies on *Rosa*'s statement that "any of a variety of circumstances may suffice to supply the jurisdictional nexus," as if it were alluding to the existence of several other means. *United States v. Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994). It wasn't. *Rosa* was simply referring to the different factual circumstances in the three cases it was relying on, all of which involved either (1) actual interstate commerce or (2) defendants' belief that the goods moved in interstate commerce. This one out-of-context statement does not support the government's baseless speculation that there are plenty of other "means" of satisfying the jurisdictional element.

Although it does not expressly say so, the government could be suggesting (at 69) that a defendant's specific intent that the victim be federal is a third distinct means of satisfying the jurisdictional element. To be sure, such specific intent would satisfy the jurisdictional element. However, specific intent (or purpose) is simply a more culpable mens rea than knowledge/belief. *See Borden v. United States,* 593 U.S. 420, 426 (2021); *United States v. Bailey*, 444 U.S. 394, 403 (1980). That is, a "person acts

purposefully when he 'consciously desires' a particular result"; he "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Borden,* 593 U.S. at 426. And specific intent suffices for the exact same reason that knowledge/belief does. Thus, for convenience, as well as consistency with the case law (which typically speaks in terms of knowledge and belief), Mr. Wahhaj does not treat "specific intent" that a victim be federal as a distinct means from knowledge or belief.

Accordingly, notwithstanding the government's baseless speculation, there are just two means of satisfying the jurisdictional element: (1) the victim in fact would have been federal, or (2) defendants believed (or intended) that the victim would be federal.[4]

Next, the government claims the instruction actually given was sufficient. It wasn't.

First, the government asserts (at 65-66) that the instructions accurately tracked the elements of the offense, citing *United States v. Hassan*, 742 F.3d 104, 113 (4th Cir. 2014). However, that out-of-circuit case merely stated what the elements of the

---

[4] The government also stresses that these two alternatives are not mutually exclusive. However, Mr. Wahhaj never claimed they were. Certainly, both can be true and presumably are in most cases. *See, e.g.*, *Hassan*, 742 F.3d at 114 (defendants conspired to attack Marine Corps Base at Quantico); *United States v. Martinez-Hernandez*, 118 F.4th 72 (1st Cir. 2024) (inmates conspired to kill federal correctional officer). However, the government need only prove one to satisfy the jurisdictional element. This does not undermine Mr. Wahhaj's argument in any way.

offense were in the context of a sufficiency claim. *Id.* (finding sufficient evidence where defendants planned attack on Marine Corps Base at Quantico). It did not address the adequacy of any jury instructions. Moreover, the instructions in this case did *not* track the general elements of conspiracy as defined in this Court's precedent. *Compare* R. vol. 3 at 1817 ((1) the defendants entered a conspiracy; (2) the object of the conspiracy was to kill federal employees; and (3) an overt act) *with United States v. Cooper*, 654 F.3d 1104, 1115 (10th Cir. 2011) ("(1) there was an agreement to violate the law, (2) the defendant knew the essential objective of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, (4) an overt act was committed in furtherance of the conspiracy, and (5) the coconspirators were interdependent."). Nor did the instructions separately set out the elements of the underlying substantive offense, including the mens rea, instead lumping it altogether into one "object of the conspiracy" element. *See United States v. Bedford*, 536 F.3d 1148, 1155 (10th Cir. 2008) ("[A] district court must instruct the jury about this criminal intent requirement for the underlying offense."). Thus, the government's claim that the instructions tracked the elements of the offense is dubious.

The government also insists the instruction as to the second element—the "object of the conspiracy was to kill or attempt to kill officers and employees of the United States Government"—accurately set forth the relevant legal standard. According to the government, this one phrase clearly communicated to the jury all of the following: it "had to find that the *goal* of the conspiracy was to kill federal officers,

which necessarily meant [1] that Siraj and Lucas agreed to target specifically federal officers, [2] that the intended victims would in fact have been federal had the conspiracy been carried out, and [3] that Siraj and Lucas believed that their victims would be federal." However, it's a stretch to think a jury would divine all of that from "object of the conspiracy" alone. But even if it did, that would be a problem. Indeed, none of the government's three claims about what this language "necessarily meant" is an accurate statement of the law.

As an initial matter, however, "object" doesn't necessarily mean "the goal or end of an effort or activity: purpose, objective." Merriam-Webster, *Object*, merriam-webster.com/dictionary/object. More commonly it is merely "something … toward which thought, feeling, or action is directed"—e.g., "object for study" or "object of my affection." *Id.* Thus, "object" conveys only that killing federal employees was contemplated, not that it was the end goal. Indeed, as discussed below, that's exactly what the evidence showed—that federal employees were merely acknowledged as potential victims, not that killing federal employees was the purpose of the conspiracy.

In any event, even if the instruction specifically stated that the "goal of the conspiracy" was to kill federal employees, that still says nothing about the requisite mens rea or whether victims must in fact be federal. Indeed, each of the government's three claims about what this "necessarily meant" is in itself incorrect as a matter of law. First, the government says it "necessarily meant that Siraj and Lucas agreed to target specifically federal officers." But that's not necessarily required. Indeed, there is

no specific intent requirement as to the federal identity of the victims. Second, the government claims it necessarily meant that "the intended victims would in fact have been federal had the conspiracy been carried out." That's wrong too. The victims do not in fact have to be federal, so long as defendants subjectively believe they are. And third, the government claims it necessarily meant "that Lucas and Siraj believed that their victims would be federal." It doesn't mean that either. Again, their subjective belief is irrelevant if the victims were in fact federal.

In other words, the government claims that "object of the conspiracy" necessarily required the jury to find (1) specific intent to kill federal victims, (2) that victims in fact would have been federal, ***and*** (3) defendants subjectively believed the victims in fact would have been federal. Again, that is wildly speculative to think the jury inferred those specific mens rea requirements and understood whether it had to find victims would have been federal. And even if they did, they would not have a correct understanding of the law because they are not required to find all three. Thus, even under the government's interpretation the instructions failed to correctly state the law. Thus, it is indisputable that the courts instruction that the "object of the conspiracy was to kill" federal employees did not "provide the jury with an accurate understanding of the relevant legal standards." *United States v. Kearney*, 150 F.4th 1328, 1335 (10th Cir. 2025).

### B. The error was plain.

The government argues that any error isn't plain because Mr. Wahhaj has not cited a Supreme Court or Tenth Circuit case expressly holding that (1) the "two alternative means" he identifies are exclusive; (2) the court must instruct the jury on them; or (3) the "object of the conspiracy" instruction is not sufficiently clear. None of these arguments defeat the plainness of the error.

First, as the government recognizes, "consensus in the other circuits" suffices to establish plainness. And Mr. Wahhaj's opening brief cited multiple circuit courts holding that federal jurisdictional elements can be established in the two ways he identifies: "[T]he interstate nexus requirement (which, as noted above, is 'jurisdictional') can be established in one of two ways: (1) by establishing the bombed building(s) were used in interstate commerce; or (2) by showing that one of the conspirators believed that the targeted buildings were used in interstate commerce." *United States v. Soy*, 454 F.3d 766, 769 (7th Cir. 2006); *accord United States v. Medeiros*, 897 F.2d 13, 15 (1st Cir. 1990); *Rosa*, 17 F.3d at 1545 (2d Cir.). The government's response cited a Third Circuit case similarly recognizing these two alternative means. *United States v. Jannotti*, 673 F.2d 578, 590-94 (3d Cir. 1982). On the other hand, the government has not cited any case disagreeing with this position, nor even hinting that any other means of satisfying the element exists (again, *Rosa* did no such thing). Nor can the government even conjure a theoretical additional means of satisfying the element. Thus, notwithstanding the government's wishful thinking, these are the only

two means of satisfying the jurisdictional element that are currently recognized in the law, and every circuit to address the issue agrees.

Moreover, Mr. Wahhaj's position should not be controversial—it simply follows binding Supreme Court precedent and black letter law. That is, for a completed crime, there is no mens rea for the federal jurisdictional element. That's true of conspiracy as well, except that instead of having to prove the jurisdictional fact *actually* existed, the government need only prove that it *would have* existed. This much is plainly established by *Feola*. In addition to this, Mr. Wahhaj is simply recognizing black letter law on inchoate offenses that, in lieu of proving the fact actually existed, the government can instead prove the defendant *believed* it existed (or specifically intended for it to exist), as *Feola* clearly implied, and several circuits have expressly done.

The government's claim that it's not plain the jury has to be instructed on these two means is similarly unconvincing. These alternative means establish the requisite mens rea for the jurisdictional element of the offense, and this Court has routinely held that the failure to correctly instruct the jury on the requisite mens rea is plainly erroneous. *See, e.g.*, *United States v. Wyatt*, 964 F.3d 947, 950-51 (10th Cir. 2020) (holding that district court plainly erred in failing to instruct the jury on the mens rea of willfulness for the conspiracy counts). Moreover, to establish plainness, a defendant need only show that the requisite mens rea (or other element) is clearly established, and that the district court didn't instruct on it. *Id.* The defendant need not cite a case where this Court held it was error not to correctly instruct the jury on that

particular offenses' elements. *See, e.g.*, *United States v. Kearney*, 150 F.4th 1328, 1336 (10th Cir. 2025) (finding the district court plainly erred in instructing the jury on the elements of the offense based solely on the plain language of the statute, notwithstanding the district court's use of the pattern instruction).

Here, the jurisdictional element had a mens rea clearly established in the law, and the district court didn't instruct the jury on it. Merely instructing the jury that the "object of the conspiracy was to kill" federal employees in no way conveys to the jury that it must find either: (1) there in fact would have been federal victims, or (2) the defendants *believed* with practical certainty (or specifically intended) that victims would be federal. Indeed, even the government's interpretation of this language—that it necessarily meant the jury had to find specific intent, subjective belief, ***and*** federal victims in fact—would be a plainly incorrect statement of law.

Accordingly, the district court's failure to instruct the jury on the mens rea of the jurisdictional element of the offense was plainly erroneous.

### C. Prejudice

The government's only argument on prejudice is that the "evidence was sufficient." Gov't Br. 73-74 (asserting six times that the "evidence was sufficient"). Of course, whether the evidence was "sufficient to sustain the jury's verdict" is "the wrong question." *United States v. Chavez*, 976 F.3d 1178, 1212 (10th Cir. 2020). Thus, the government has effectively waived any argument that the error was not prejudicial. For the reasons set forth in Mr. Wahhaj's opening brief (at 40-41), there is a

"reasonable probability" that the jury would not have convicted him on Counts 1-3 but for the erroneous jury instruction.

The government has also waived any argument as to the fourth prong of the plain-error test by declining to address it. Accordingly, this Court should vacate Counts 1-3.

## III. The evidence was insufficient on the jurisdictional element.

Again, there are two means of satisfying the federal jurisdictional element: (1) a federal employee in fact would have been a victim or (2) defendants believed a federal employee would have been a victim.[5] The government claims the jurisdictional element was satisfied because the defendants "believed" that federal employees were "intended" targets. Not only does the government misunderstand and conflate these mens reas, it fails to marshal sufficient evidence in support of either one. That is, the evidence does not show that federal employees were *intended* targets, only potential victims. Moreover, there is no evidence defendants *believed* the victims *would be* federal, only that they knew they might be. Accordingly, the government has failed to point to sufficient evidence satisfying the *Feola* standard.

As an initial matter, because the government seems to conflate various mental states, it is important to again precisely define them. There are "four states of mind"

[5] Although the government's jury-instruction argument disputed these alternative means of establishing the jurisdictional element, the government's sufficiency section seems to accept this framing.

in modern criminal law. *Borden v. United States,* 593 U.S. 420, 425 (2021). They "are, in descending order of culpability: purpose, knowledge, recklessness, and negligence." *Id.* at 426. "A person acts purposefully when he 'consciously desires' a particular result." *Id.* In "a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980). A person "acts knowingly when 'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Borden,* 593 U.S. at 426. "A person acts recklessly … when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct." *Id.*

The distinction between purpose and knowledge "matters for certain 'classes of crimes,'" including "conspiracy." *Id.* at 427 & n.3. "[C]onspiracy is a specific intent crime." *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995). Thus, the defendant typically must act "purposefully" and "consciously desire[]" the particular result. *Borden,* 593 U.S. at 426. To use the Model Penal Code's example, "if two persons plan to destroy a building by detonating a bomb, though they know and believe that there are inhabitants in the building who will be killed by the explosion, they are nevertheless guilty only of a conspiracy to destroy the building and not of a conspiracy to kill the inhabitants." 1 Pros & Def of Criminal Conspiracy Cases § 209 (quoting Model Penal Code § 5.03, cmt.).[6]

[6] "While this result may seem unduly restrictive from the viewpoint of the completed crime, it is necessitated by the extremely preparatory behavior that may be involved in

With the correct understanding of these terms, the evidence the government cites is clearly insufficient to support its claim that defendants either *intended* that victims be federal or *believed* they would be.

First, there was no evidence the defendants specifically intended, or "consciously desired," that the victims be *federal*. If anything, the evidence shows the defendants only specifically intended to kill (1) law enforcement that threatened the compound and (2) nonbelievers at corrupt institutions around the world as AG directed. That FBI agents and federal government employees were among potential victims the defendants contemplated does not make them *intended* targets. Nor does it "give rise to the conclusion that had the attack been carried out the victim would have been a federal officer." *Feola*, 420 U.S. at 695-96. Indeed, deeming every potential victim an intended target would completely negate *Feola*'s requirement that the object of the conspiracy be "identified with sufficient specificity." *Id.*

Stated differently, the government fails to appreciate the distinction, required by *Feola*, between a conspiracy to attack *everyone* in a group, some of whom are federal employees, and a conspiracy to attack *some* in that group. In the first scenario, the agreement itself is sufficient because, if the assault is carried out, the federal employee will be one of the victims (or the defendants specifically intend or believe they will

---

conspiracy. Had the crime been completed or had the preparation progressed even to the stage of an attempt, the result would be otherwise. As to the attempt, knowledge or belief that the inhabitants would be killed would suffice." *Id.*

be). In the latter scenario, the government has more work to do to prove that, if the attack is carried out, the federal employee would in fact be a victim—that is *Feola* in a nutshell. But the government treats a broad conspiracy to attack *some* in the group as a collection of micro-conspiracies in which the defendants specifically intend to attack each individual person within the group. By doing so, the government claims that *Feola* is satisfied because, if that potential micro-conspiracy is carried out, a federal employee will be the victim. But that turns *Feola*'s specificity requirement on its head. Where it is unknown—both in reality and to the defendants—whether the conspiracy would result in federal victims, then the government has not proven the federal jurisdictional element. That is the case here.

Contrary to the government's claim, there is insufficient evidence the defendants knew or believed the victims would be federal. Again, "knowledge" means "'he is aware that [a] result is practically certain to follow from his conduct,' whatever his affirmative desire." *Borden,* 593 U.S. at 426. There is no indication the defendants believed it was "practically certain" that a victim would be federal. On the contrary, even the evidence the government points to (at 59) makes clear they did not know whether any law enforcement agency who came to the compound would be federal or local. At most, the defendants knew there was a substantial possibility there might be federal victims, which equates to recklessness not knowledge. *See Borden*, 593 U.S. at 426 ("A person acts recklessly … when he 'consciously disregards a substantial and unjustifiable risk' attached to his conduct.").

As to the government's "war" theory (at 61), it relies on the following syllogism: the defendants believed AG would lead them to rid the world of nonbelievers and corrupt institutions; they believed the federal government was a corrupt institution; therefore, AG was going to lead them to federal government buildings where they would kill the non-believing federal employees. However, contrary to the government's suggestion, the evidence was not that they would go to every single place of corruption and kill someone, and therefore it was inevitable that they would kill a federal government employee. Nor was it preordained that they would go to a federal government building. All the defendants knew or believed with practical certainty was the general prophecy that AG would lead them around the whole world to rid it of corruption—anything beyond that was speculation.

As J.L.J. explained, the only specific location identified was Grady Hospital in Georgia. Besides that, "There was no specifics." R. vol. 6 at 1371. A.G. "was going to decide the specifics," and "the group was waiting to find out." *Id.*; *accord id.* at 1750 (confirming that A.G. "would identify the corrupt institutions"). And while Jany believed all of government was corrupt (*id.* at 1448), there was not sufficient evidence from which the jury could find beyond a reasonable doubt that Siraj and/or Lucas was practically certain that A.G. was going to lead them to a federal government building where they would kill an employee who did not become a believer after he performed miracles. Indeed, J.L.J. expressly confirmed that "nobody knew that for sure." *Id.* at 1448 (confirming that "in talking about the possibility that maybe the

federal government, federal law enforcement, FBI, could be nonbelievers, nobody knew that for sure."). Rather, the evidence was simply that federal agencies were among the countless potential targets around the world he might lead them to. This is clearly insufficient to satisfy *Feola*'s specificity requirement. Tellingly, the government does not cite a single case supporting its interpretation that *Feola* is satisfied where defendants are aware that a fact giving rise to federal jurisdiction *might* occur.

Accordingly, the evidence was insufficient to support the federal jurisdictional element, and this Court must reverse Mr. Wahhaj's convictions on Count 1-3.

**Conclusion**

This Court should vacate Mr. Wahhaj's convictions and remand for entry of a judgment of acquittal or, alternatively, for further proceedings.

Respectfully submitted,

Virginia L. Grady
Federal Public Defender

By: */s/ Jacob Rasch-Chabot*
Jacob Rasch-Chabot
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
Email: Jacob_Rasch-Chabot@fd.org

**Certificate of Compliance**

As required by Fed. R. App. P. 32(g)(1), I certify that this brief is proportionally spaced and contains 6408 words. I relied on my word processor to obtain the count, and the information is true and correct to the best of my knowledge.

*/s/Jacob Rasch-Chabot*
Jacob Rasch-Chabot
Assistant Federal Public Defender